UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LOUIS GOULD, JR.                                    CIVIL ACTION

VERSUS                                              NO. 08-3694

MICHAEL J. ASTRUE, COMMISSIONER                     SECTION "I" (2)
OF SOCIAL SECURITY ADMINISTRATION

## ORDER ON MOTION, AND
## FINDINGS AND RECOMMENDATION

Pro se plaintiff, Louis Gould, Jr., seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI, respectively, of the Act. 42 U.S.C. §§ 405(g), 423, 1381a. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

Before service of process was completed, Gould filed a motion to supplement his complaint with an exhibit that he had cited in, but not attached to, his original complaint. The court deferred a decision on the motion until the preparation of this report and recommendation. Record Doc. No. 5.

Plaintiff filed a timely memorandum in support of his claim. Record Doc. No. 15. Defendant filed a timely reply memorandum. Record Doc. No. 16.

I.  PROCEDURAL HISTORY

Gould filed applications for SSI and DIB on August 18 and 30, 2006, respectively, alleging disability since December 18, 2004, due to vision problems resulting from a left eye injury in 1983 and multiple surgeries on his left eye since then. (Tr. 48-54, 60). After his applications were denied, Gould requested and received a hearing before an Administrative Law Judge ("ALJ"), which was held on December 14, 2007. (Tr. 139-49). On December 19, 2007, the ALJ issued a decision denying plaintiff's applications. (Tr. 12-18). After the Appeals Council denied review on May 29, 2008, the ALJ's decision became the final decision of the Commissioner for purposes of this court's review. (Tr. 4-8).

Although the legal standards for determining disability are the same for DIB and SSI, Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994); Hollis v. Bowen, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988); Hector v. Barnhart, 337 F. Supp. 2d 905, 910 (S.D. Tex. 2004) (citing 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a)), different eligibility time periods apply to Gould's claims under the two programs. As to his claim for DIB, his disability insured status expired on December 31, 2004. (Tr. 12). If he qualified for a period of DIB, he would receive such

benefits only from December 18, 2004, the alleged onset date, through December 31, 2004, when his insured status expired.  Thus, for purposes of receiving DIB, Gould must show that he became disabled on or before December 31, 2004, when his insured status expired.  20 C.F.R. §§ 404.101, 404.320(b)(2); <u>Anthony v. Sullivan</u>, 954 F.2d 289, 295 (5th Cir. 1992) (citing 42 U.S.C. § 423(a), (c)); <u>Oldham v. Schweiker</u>, 660 F.2d 1078, 1080 (5th Cir. 1981).  Medical evidence from the 12 months preceding December 31, 2004 is relevant to establishing that he was disabled as of that date.  20 C.F.R. § 404.1512(d)(2).

As for SSI, "[c]laimants applying to the SSI program may <u>not</u> receive payments for a period predating the month in which they apply for benefits."  <u>Rosetti v. Shalala</u>, 12 F.3d 1216, 1224 n.20 (3d Cir. 1993) (citing 20 C.F.R. § 416.335) (emphasis added); <u>accord</u> <u>Brown v. Apfel</u>, 192 F.3d 492, 495 n.1 (5th Cir. 1999).  "Thus, the month following an application [for SSI] . . . fixes the earliest date from which benefits can be paid. Eligibility for SSI payments, however, is not dependent on insured status." <u>Hector</u>, 337 F. Supp. 2d at 910 (citing 20 C.F.R. § 416.335; <u>Brown</u>, 192 F.3d at 495 n.1).  Despite plaintiff's claimed onset date of December 18, 2004, he could only receive SSI benefits from September 2006, the month after he filed his application, through December 19, 2007, the date of the ALJ's decision.  Medical records from the 12 months

preceding August 18, 2006 are relevant to proving that he was disabled as of the date of

his application for SSI. 20 C.F.R. § 416.912(d)(2).

II.     PLAINTIFF'S MOTION TO SUPPLEMENT HIS COMPLAINT

Gould filed his motion to supplement his complaint, Record Doc. No. 5, before

the Commissioner answered the complaint and filed the administrative record with the

court. Plaintiff's motion seeks to introduce a medical record that is already in the

administrative record. (Tr. 138). Accordingly, the motion is DISMISSED AS MOOT.

III.    STATEMENT OF ISSUES ON APPEAL

Plaintiff, who is proceeding pro se, raises the following issues:

1.      The ALJ erred by failing to address new evidence that contradicts the
        consultative examiner's report and by failing to research past evidence of
        treatment.

2.      The Appeals Council erred by failing to review plaintiff's case, based on
        the new evidence that he submitted.

3.      The ALJ erred by failing to acknowledge that Gould was "already in the
        system before" December 2004.

IV.     ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.      Plaintiff met the insured status requirements of the Act through
        December 31, 2004.

2.      He has not engaged in substantial gainful activity since December 18,
        2004, the alleged onset date. He worked for 39 hours per week for only
        three months in 2007.

4

3.      Gould has a severe impairment of blindness in the left eye, which causes minimal limitation in his ability to perform basic work activities. He has no depth perception and no binocular vision. His best corrected vision in his right eye is 20/40, and he therefore has no more than minimal limitation. He has no physical restrictions.

4.      His impairment does not meet or equal any listed impairment found at 20 C.F.R., Part 404, Subpart P, Appendix 1.

5.      Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: no binocular vision or depth perception. He should avoid hazardous machinery.

6.      Although plaintiff's allegations are credible, they may be exaggerated in an attempt to seek benefits. His subjective allegations are not supported in the record to show disability and there is no evidence of disability from his alleged onset date through the date of this opinion. His allegations are not supported to the extent alleged.

7.      He cannot perform his past relevant work as a machine operator or custodian.

8.      Considering his age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Gould can perform, including information clerk and cashier.

(Tr. 14-17).

V.      ANALYSIS

A.      Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate

legal standards in evaluating the evidence.  <u>Perez v. Barnhart</u>, 415 F.3d 457, 461 (5th Cir. 2005); <u>Waters v. Barnhart</u>, 276 F.3d 716, 716 (5th Cir. 2002); <u>Loza v. Apfel</u>, 219 F.3d 378, 390 (5th Cir. 2000).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Perez</u>, 415 F.3d at 461; <u>Loza</u>, 219 F.3d at 393.  This court may not "reweigh the evidence in the record, try the issues <u>de novo</u> or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."  <u>Newton v. Apfel</u>, 209 F.3d 448, 452 (5th Cir. 2000).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  <u>Id.</u>

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  <u>See</u> <u>Arkansas v. Oklahoma</u>, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  <u>Perez</u>, 415 F.3d at 461.  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  <u>Id.</u>; <u>Newton</u>, 209 F.3d at 452; <u>Martinez v. Chater</u>, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI or DIB,[1] plaintiff must show that

he is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations

that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§

404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2007). The regulations

include a five-step evaluation process for determining whether an impairment prevents

a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920;

Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[2] The five-step

---

[1]As previously noted, the relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI. Greenspan, 38 F.3d at 236; Hollis, 837 F.2d at 1382 n.3; Hector, 337 F. Supp. 2d at 910.

[2]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the

inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Perez, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry.  If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  Id.; Newton, 209 F.3d at 453.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability:  (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."  Martinez, 64 F.3d at 174.

B.      Factual Background

Gould, who was represented by counsel at the hearing, testified that he was 54 years old and had graduated from high school.  (Tr. 142-43).  He stated that he had worked as a machine operator in a plant and as a custodian.  He said he last worked as

---

physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (2007) ("Medical-Vocational Guidelines").

a custodian for the Sisters of Holy Cross for about three months in early 2007 for 38 to 39 hours per week, and was paid $9 per hour. (Tr. 143). He testified that he stopped working after he started having problems performing his duties because of his vision. Specifically, he said that he could not perform certain parts of the job well because he had to use machinery or other equipment, but that he had no problems performing other parts of the job. (Tr. 143, 144-45).

Plaintiff stated that he sometimes bumps into door frames when entering a room or pours coffee on the table instead of into the cup because he misjudges the distance. He said he injured his left eye in 1983 and had a corneal graft and a lens implant. He stated that he has had more than four surgeries and one rejection. (Tr. 144). He testified that he cannot work because he would be a major danger to himself and co-workers on any job when using certain types of equipment because of his lack of vision, and because he would be a liability to any employer that would hire him.

Asked why he could not perform a job that did not require the use of machinery, Gould stated that he would probably be given paperwork to read or to correspond. He said that, if he were a supervisor, he might have to explain to an employee where to go, but he could not do it with 100 percent certainty because he could not see it for himself. (Tr. 145).

Plaintiff testified that he cannot do simple things like pouring coffee into a cup and that he recently scalded his thigh when he dropped a pot of hot water. (Tr. 146). He mentioned that he recently broke or dislocated "this" (apparently his thumb), and he put a piece of tape on it to hold it in place until he could see a doctor. He said he has no medical insurance. He stated that he woke up one morning about a week ago and his thumb was hurting, but he does not remember if he banged it somehow.

Gould testified that he can read, but that sometimes he has a problem because he had special glasses prescribed after his surgery, but he lost them during the storm[3] and has not yet obtained a new pair. He said he has been using ordinary reading glasses to focus with his right eye. He stated that his prescription glasses had bifocals on the left side, with special, very thick glass on that side. (Tr. 146). He said his doctor told him he might need a contact lens on the left, but when he tried it, the cornea was too delicate and the contact lens irritated his eye. (Tr. 146-47).

Although he hurt his eye in 1983, plaintiff worked in 1987, 1988 and 1989. He stated that he re-injured his eye on one job, which caused him to have another surgery, and that he also had another surgery because his eye rejected the cornea. He said that he tried to work in between surgeries to have some income. He explained that he tried to

---

[3]Hurricane Katrina made landfall near New Orleans on August 29, 2005.

keep the fact of his eye pain from his employers because they would not hire him if they knew about it.  (Tr. 147).

C.    Vocational Expert Testimony

A vocational expert, Deborah Bailey, testified at the hearing.  The ALJ posed a hypothetical of a person closely approaching advanced age with a high school education and no exertional limitations, with one good eye, but with no binocular vision in one eye and no depth perception, who should avoid hazardous equipment, machinery and unprotected heights.  Bailey testified that jobs are available in the national and state economies that such an individual could perform, including, in the light category, information clerk and cashier.  (Tr. 148).

Plaintiff's attorney posed a hypothetical of an individual with the additional limitations that he was consistently unable to maintain an eight-hour day or to keep up with expected production levels.  The vocational expert stated that such a person could not perform any jobs.  (Tr. 148-49).

D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 16).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.      Plaintiff's Appeal

      1.      The ALJ did not err by failing to address new evidence that contradicts the consultative examiner's report and by failing to research past evidence of treatment.

Plaintiff argues that the ALJ erred by failing to address new evidence he submitted that contradicts the consultative examiner's report and by failing to research past evidence of treatment. Specifically, Gould cites a report from Dennis J. Muller, O.D.,[4] F.A.A.O.[5], dated after the ALJ's decision, which he submitted to the Appeals Council as new evidence. New evidence is material only if it relates to the time period for which the disability benefits were denied, <u>and</u> there is a reasonable probability that the new evidence would change the outcome of the Commissioner's decision. <u>Castillo v. Barnhart</u>, 325 F.3d 550, 551-52 (5th Cir. 2003).

Dr. Muller examined plaintiff on February 19, 2008. He said that Gould has best corrected vision in his right eye of 20/25 and has only light perception in his left eye. Dr. Muller noted that Gould has a cataract developing in his right eye that "obscures his vision and will continue to obscure his vision more and more each day." Dr. Muller stated that plaintiff's former occupations of heavy machine operator and custodian are

---

[4]Doctor of osteopathy or optometry.

[5]Fellow of the American Academy of Ophthalmology. According to the website of the American Academy of Ophthalmology, doctors of osteopathy are eligible for membership. http://www.aao.org/member/join/Active-Fellow-Applications.cfm

not safe for a one-eyed person because of the risk of injury to his good eye. Dr. Muller opined that "[t]he only safe work environment would be an office setting where at most he would be using a computer or doing paperwork. My opinion is [that] no one will hire him as a result of the potential liability of an on the job injury causing permanent blindness. I also believe it would not be safe for Mr. Gould to try to work in either of his past environments. This should qualify him for a 100% disability." (Tr. 138).

Plaintiff contends that the Commissioner should have accepted Dr. Muller's opinions instead of those of the consultative examiner, Joseph P. Rumage, M.D., who examined Gould on October 28, 2006. Dr. Rumage found that plaintiff's right eye was clear and normal with best corrected vision of 20/40. The left eye was dilated and fixed with the lens absent and its vision field was constricted to 10 degrees, but Gould was able to walk into the examining room without assistance. Dr. Rumage diagnosed presbyopia[6] in plaintiff's right eye, and a corneal graft, aphakia[7] and amblyopia[8] in his left eye. The doctor also diagnosed alcoholism, based on plaintiff's daily drinking of a six-pack of

---

[6]Presbyopia is "a visual condition which becomes apparent especially in middle age and in which loss of elasticity of the lens of the eye causes defective accommodation and inability to focus sharply for near vision." Medline Plus Medical Dictionary, avail. at http://www2.merriam-webster.com/cgi-bin/mwmednlm?book=Medical&va=presbyopia.

[7]Aphakia is the "absence of the crystalline lens of the eye." Id. at http://www2.merriam-webster.com/cgi-bin/mwmednlm?book=Medical&va=Aphakia.

[8]Amblyopia means "dimness of sight especially in one eye without apparent change in the eye structures–called also lazy eye, lazy-eye blindness." Id. at http://www2.merriam-webster.com/cgi-bin/mwmednlm?book=Medical&va=amblyopia.

beer, the odor of alcohol on his breath, his lack of cooperation during the examination and his poor comprehension of instructions. Dr. Rumage opined that Gould can read both fine and large print, handle and work with large objects, drive a car (although his driver's license expired in September 2003), operate machinery, avoid objects in workplace pathways and avoid people approaching from the side. Dr. Rumage noted that plaintiff's prognosis for both eyes was permanent and stable. (Tr. 138).

The ALJ relied on Dr. Rumage's findings in assessing plaintiff's residual functional capacity. In addition, the ALJ "gave great weight to claimant's treating ophthalmologist" (Tr. 16), Seema G. Gupta, M.D., who stated on October 29, 2004 that Gould has a "permanent injury in the left eye" and "is currently unable to perform any occupation requiring good vision or depth perception." (Tr. 101). Similarly, a note dated September 26, 1983 from Craig M. Mason, M.D., to the Social Security Office stated that Gould "[c]urrently . . . is unable to work at his trade (machinist) as vision in his left eye still poor and he will have no depth perception [needed] for this work." (Tr. 101). Another doctor, Pinchas Rosenberg, M.D., wrote to the Social Security Office on September 29, 2004 that plaintiff "still has hand motion vision on the left. He is currently having difficulty finding employment in his monocular state." (Tr. 101). A non-examining physician, Jerome Medley, reviewed the medical records and completed a residual functional capacity assessment form on November 6, 2006. He diagnosed

aphakic left eye with a corneal graft.  Dr. Medley opined that, because of his lack of

depth perception, Gould would not be able to perform work that required binocular

function.  (Tr. 106-13).

Thus, all of the physicians who treated or examined Gould prior to the ALJ's

decision were in agreement about his lack of depth perception and binocular function,

which placed some limitations on the type of work he could do.  The ALJ adopted these

findings in his decision.  Notably, none of these physicians opined that Gould could not

perform any work.  They all said or implied only that he could not work as a machine

operator or at other jobs that required binocular function or depth perception.  Dr. Muller

also stated that plaintiff's eye problem precluded him from working in his past jobs, but

that he could work in an office setting.  This does not contradict the findings on which

the ALJ relied.

Dr. Muller's speculation about the willingness of an employer to hire plaintiff  is

clearly not a medical opinion or within a physician's medical expertise.  The ALJ would

not have been required to adopt that speculation, particularly when it is contradicted by

the vocational expert's opinion that jobs exist in the national economy that Gould could

perform, with the limitations that the ALJ noted.

Dr. Muller also stated that Gould should qualify for 100% disability.  However,

it is well established that a physician's statement that a patient is disabled does not mean

that the person is disabled for purposes of the Act, because that is a determination that may be made only by the Commissioner. Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003); Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001); Tamez v. Sullivan, 888 F.2d 334, 336 n.1 (5th Cir. 1989).

> [S]ome opinions by physicians are not medical opinions, and as such have no "special significance" in the ALJ's determination. Among the opinions by treating doctors that have no special significance are determinations that an applicant is "disabled" or "unable to work." These determinations are legal conclusions that the regulation describes as "reserved to the Commissioner." . . . The doctor's opinion [that plaintiff could not work] was not a medical opinion within the meaning of the regulation.

Frank, 326 F.3d at 620 (quoting 20 C.F.R. § 404.1527(e), (1) & (e)(3)). Thus, the ALJ was not required to accept Dr. Muller's statement that Gould was 100% disabled.

Furthermore, conflicts in the evidence are for the Commissioner, not the court, to resolve. When a plaintiff argues only that the ALJ's decision was based on a doctor's opinion, which he contends is at odds with another doctor's opinion, the "argument demonstrates only that there was a conflict in the evidence. Such a conflict is not sufficient for reversal under the substantial-evidence standard." Ochoa v. Barnhart, 73 Fed. Appx. 78, 2003 WL 21756437, at *1 (5th Cir. 2003) (citing Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002); Brown, 192 F.3d at 496; Moore v. Sullivan, 919 F.2d 901, 904 (5th Cir. 1990)). Substantial evidence supports the ALJ's decision to rely on the opinions of Dr. Rumage, Dr. Medley and plaintiff's treating physicians that he can

perform some types of work. Even Dr. Muller stated that plaintiff could work in an office environment, which does not conflict with the opinions already in the record. The ALJ would have been entitled to reject Dr. Muller's statement that Gould was 100% disabled both because it was not a medical opinion and because it conflicted with substantial evidence in the record. Thus, even if the ALJ had considered the new evidence, it would not have changed the outcome of his decision.

Plaintiff argues that the ALJ erred in finding him disabled because he cannot return to work in his previous jobs as a machine operator and custodian. However, the ALJ found that Gould is blind in his left eye and cannot perform his past relevant work. The regulations require the ALJ to determine at the fifth step of the sequential evaluation whether plaintiff can "make an adjustment to other work. . . . If you can make an adjustment to other work, we will find you not disabled." 20 C.F.R. §§ 404.1520(g), 416.920(g). "Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country)." Id. §§ 404.1560(c)(1), 416.960(c)(1).

Once the ALJ has found that a claimant with nonexertional impairments, such as Gould's lack of binocular vision or depth perception, cannot perform his past relevant work, the ALJ "must rely on a vocational expert to establish that such jobs that the

17

claimant can perform exist in the economy." Newton, 209 F.3d at 458 (citation omitted) (emphasis added).

The ALJ properly presented the vocational expert with a hypothetical question to determine whether jobs exist in the national economy that a person with plaintiff's limitations could perform. The hypothetical accounted for plaintiff's age, education, work experience and physical limitations, which the ALJ found to be credible. Bailey testified that jobs exist in significant numbers that such a person could perform, including information clerk and cashier.

An ALJ's hypothetical question is defective and will not be allowed to stand unless it reasonably incorporated all of the disabilities recognized by the ALJ, "and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994). Plaintiff was represented by counsel at the hearing, and his counsel also questioned the vocational expert, posing the additional limitations that the claimant would consistently be unable to maintain an eight-hour day or to keep up with expected production levels. No evidence in the record supports these

suggested limitations. Therefore, the ALJ was not required to accept them. Carey v. Apfel, 230 F.3d 131, 143 (5th Cir. 2000).

The ALJ found that jobs exist in significant numbers that Gould could perform with his limitations that were supported by the evidence. "The ALJ expressly and rightly relied on the testimony of . . . the vocational expert, in reaching this conclusion. [Plaintiff] offered no contrary evidence and thus did not satisfy his burden to prove that he could not perform the kinds of jobs identified by" the vocational expert. Masterson, 309 F.3d at 273.

Gould makes no legal argument in support of his contention that the ALJ failed to research his past treatment. Although the ALJ has the duty to develop fully and fairly the facts relative to a claim for benefits, reversal of the ALJ's decision for failure to develop the record is appropriate only if the applicant shows that he was prejudiced by the failure. Carey, 230 F.3d at 142; Newton, 209 F.3d at 458; Ripley v. Chater, 67 F.3d 552, 557 (5th Cir. 1995). "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." Id. at 557 n.22 (citation omitted); accord Carey, 230 F.3d at 142.

The records contain three notes from plaintiff's treating physicians dated September 26, 1983; September 29, 2004; and October 29, 2004, which the ALJ

expressly considered. The ALJ also ordered a consultative examination from Dr. Rumage to assess plaintiff's current condition. Any records prior to December 31, 2003 (12 months before Gould's DIB insured status expired) are not relevant to his claims. Similarly, records between December 31, 2004 (when his DIB insured status expired) and August 18, 2005 (12 months before he was eligible for SSI) are not relevant. Thus, the ALJ could not have erred by failing to obtain such records, if any exist,[9] and he fulfilled his duty to develop the record. Furthermore, Gould has not shown that he was prejudiced by any failure to obtain treatment records predating those already in the record.

Accordingly, this assignment of error lacks merit.

2.    The Appeals Council did not err by failing to review plaintiff's case based on the new evidence that he submitted.

Gould argues that the Appeals Council erred by failing to review his entire case based on the new evidence that he submitted. The Appeals Council initially denied review on February 22, 2008. It reconsidered plaintiff's request for review after he submitted additional evidence. The Appeals Council held that the new evidence did not

---

[9]Plaintiff suggested in one of his letters to the Social Security Administration that his medical records may have been destroyed by Hurricane Katrina. Obviously, the ALJ could not have obtained records that no longer exist.

provide a basis for changing the ALJ's decision and again denied Gould's request for review. (Tr. 4-7).

The Appeals Council may receive additional evidence, provided that it is material and relates to the period on or before the date of the ALJ's decision. 20 C.F.R. §§ 404.976(b), 416.1476(b). Materiality of new evidence depends upon whether (1) the evidence related to the time period for which the disability benefits were denied, and (2) there is a reasonable probability the new evidence would change the outcome of the ALJ's decision. Martinez v. Astrue, 252 Fed. Appx. 585, 2007 WL 3144026, at *2 (5th Cir. 2007); Charles v. Astrue, No. 07-1172, 2008 WL 4003651, at *3 (W.D. La. Aug. 7, 2008) (citing Bradley v. Bowen, 809 F.2d 1054 (5th Cir. 1987)).

Plaintiff submitted to the Appeals Council Dr. Muller's evaluation dated February 19, 2008, several letters from himself to the Appeals Council, a letter from his attorney resigning from the case, some notices of medical appointments, an undated bill for lab tests, a one-page medical discharge instructions dated October 28, 2004 and a one-page medical record dated September 26, 1983. (Tr. 114-138). None of this evidence is "material" under the Castillo definition.

Plaintiff's letters are not evidence concerning his medical impairments, but are only transmittal letters and/or argument. (Tr. 114-22, 124-). To the extent that his letters allege new medical findings, such as a recent diagnosis of arthritis in his right thumb or

a need for oral surgery (Tr. 117, 128), the letters are not material because they relate to a time period after the ALJ's decision and to diagnoses of new conditions that were not alleged as disabling if plaintiff's applications for benefits. In addition, the diagnoses are unsupported by any objective medical evidence.

The letter from plaintiff's attorney is irrelevant to his impairments. (Tr. 123). The various appointment notices (Tr. 129-31) and the undated lab bill (Tr. 132), even if it was created during a relevant time period, show only that Gould had scheduled some doctor's appointments and tests, but the documents contain no examination findings, test results, diagnoses or medical opinions. The September 1983 medical record is not material because it does not relate to the relevant time periods for establishing plaintiff's disability. Even if this record were considered, it would not change the outcome, as it shows merely that Gould had an injury to his left eye in August 1983, had surgery in September 1983 and was unable to work at that time. (Tr. 137). Plaintiff testified concerning his eye injury and surgeries, and that information was documented in the medical reports already in the record. The ALJ accepted those facts and found that plaintiff's left eye blindness with no depth perception and no binocular vision was a severe impairment.

The only possibly material, new evidence consists of the medical discharge instructions dated October 28, 2004 and Dr. Muller's report. The October 28, 2004

discharge instructions are from the Medical Center of Louisiana at New Orleans, Outpatient Surgery, Ophthalmology Services. The document does not indicate what surgery plaintiff had. It states that he may resume his preoperative medications and may take Tylenol as needed for pain or discomfort. Three medications are prescribed and he is scheduled for an appointment at LSU Eye Center the next day. This document is not material as it contains minimal information; has no examination findings, test results, diagnoses or medical opinions; and would not change the outcome of the Commissioner's decision.

As discussed in the preceding section concerning plaintiff's first assignment of error, to the extent that Dr. Muller's report conflicts with the other medical evidence and opines that Gould is disabled, the report does not provide substantial evidence to overturn the ALJ's decision. In addition, Dr. Muller's statement on February 19, 2008 that plaintiff now has a cataract in his right eye that can be expected to worsen does not relate to the relevant time periods of December 18, 2004 through December 31, 2004 during which plaintiff might be eligible for DIB and September 2006 through December 19, 2007 during which he might be eligible for SSI benefits. Because Dr. Muller's opinion concerning Gould's right eye cataract significantly post-dated those relevant periods, that record is "not material to the ALJ's determination that [plaintiff] was not entitled to benefits for the period sought." Shave v. Apfel, 238 F.3d 592, 597 (5th Cir. 2001) (citing

Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994) (evidence relating to subsequent deterioration of a previously non-disabling condition is not material unless it relates to the time period for which benefits were sought and denied); id. at 164 n.20 (noting that claimant was free to seek benefits for the period covered by the additional medical records)); accord Newton, 209 F.3d at 459-60.

Accordingly, this assignment of error lacks merit.

3.      The ALJ did not err by failing to acknowledge that plaintiff was "already in the system before" December 2004.

Gould argues that the ALJ erred by failing to acknowledge that he was "already in the system before" December 2004. He states that he received letters dated October 8 and October 18, 2004 from Beverly Williams, a Social Service Analyst, about his then-pending claim. These letters are in the record and indicate that Gould made a claim for DIB in 2004. (Tr. 21, 22). In both letters, Williams asked that he supply her with information necessary to proceed with his claim. The second letter states that no response had been received from Gould to the first letter, and that a decision would be made based on the current record if he did not supply additional information within ten days. A Disability Report–Field Office dated August 30, 2006 states that plaintiff previously filed a DIB application, which was denied initially on December 17, 2004, and that the prior folder had been destroyed. (Tr. 55-56). There is no indication in the record that Gould ever sought a hearing before an ALJ concerning that denial.

Plaintiff's prior application was not before the ALJ and is not before this court in the current case. Only "final decisions" of the Commissioner are subject to judicial review. Califano v. Sanders, 430 U.S. 99, 107-08 (1977); Brandyburg v. Sullivan, 959 F.2d 555, 559 (5th Cir. 1992). Section 405(g) of the Act provides: "Any individual, after any final decision of the Secretary made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . ." 42 U.S.C. § 405(g) (emphasis added). Section 405(h) provides: "The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided." Id. § 405(h) (emphasis added). "A 'final decision' is a particular type of agency action, and not all agency determinations are final decisions." Bacon v. Sullivan, 969 F.2d 1517, 1519 (3d Cir. 1992) (citing Califano, 430 U.S. at 107-08).

It appears that no hearing was ever held before an ALJ concerning plaintiff's 2004 application for DIB. Thus, there is no "final decision" upon that application and the court lacks jurisdiction to consider it. Gould filed new applications in August 2006, and only those applications were before the ALJ and this court.

Furthermore, even if there was a hearing and an unfavorable decision from an ALJ on Gould's 2004 application, to preserve his right to seek eventual judicial review of the Commissioner's "final decision" denying benefits, plaintiff must request, within 60 days of his receipt of the decision, that the Appeals Council review the ALJ's decision. Brandyburg, 959 F.2d at 559; Harper by Harper v. Bowen, 813 F.2d 737, 739 (5th Cir. 1983); 20 C.F.R. § 416.1468(a). If he does not request and receive an Appeals Council decision that either accepts the case for review or denies review, the ALJ's decision is binding and the claimant has lost his right to judicial review of the decision. Harper, 813 F.2d at 739; 20 C.F.R. §§ 416.1455, 416.1481. There is no evidence in the record that Gould requested such review. Thus, this court lacks jurisdiction to hear an appeal from any such decision.

Accordingly, this assignment of error lacks merit.

## CONCLUSION

The ALJ did not err by failing to failing to address new evidence that contradicts the consultative examiner's report, by failing to research past evidence of treatment or by failing to acknowledge that Gould was "already in the system before" December 2004. The Appeals Council did not err by failing to review plaintiff's case based on the new evidence that he submitted.

## **RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _____6th_____ day of February, 2009.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE